Hon. Thomas Sobol Commissioner New York State Education Department
Your counsel has asked whether members of doctoral program review committees are employees of the State within the meaning of section17 of the Public Officers Law which provides for the defense and indemnification of employees for acts or omissions committed in the performance of their duties.
The Regents is authorized to register domestic and foreign institutions applying New York educational standards (Education Law, § 210). "Registration" is defined as approval of a curriculum and is required for every curriculum creditable toward a degree offered by institutions of higher education; every curriculum leading to licensure in a profession; every curriculum for which registration is required by statute, the rules of the Regents or any regulation; and every curriculum leading to a certificate or diploma offered by a nonchartered proprietary institution authorized by the Regents to grant degrees, except non-credited curricula approved by another State agency for the purpose of licensure by that agency (8 NYCRR §§ 50.1 [h], 52.1 [a]). The Regents, the Commissioner of Education, or their representatives may visit, examine and inspect any institution in the State University system and any school or institution under the educational supervision of the State (id., § 215).
The procedure and standards for registration and re-registration are established by regulation (id., §§ 52.1[b] — [n], 52.2). Specific standards have been established for curricula intended to satisfy the educational requirements for licensure in a profession (id., §§ 52.3-52.17).
The Regents' policies on doctoral education review have been documented ("Meeting The Needs Of Doctoral Education, A Statement of Policy and Proposed Action by the Regents Of The University of the State of New York", Position Paper No. 19, August, 1973). An objective of the Regents is the review and evaluation of doctoral programs by the Commissioner of Education in close consultation with eminent out-of-State consultants and also with the State's academic community, according to criteria specified by the Regents (id., p 19). This is to be done State-wide by subject area following which the programs will be placed in categories indicating their quality and whether they may be continued to be offered in the future (ibid.). The out-of-State experts utilized by the Department in the evaluation of doctoral programs serve as members of Coordinating Committees, rating committees and site visit teams (March 14, 1988 Memorandum from Denis F. Paul to Robert E. Diaz).
The procedure for doctoral program review has been established in detail (New York State Regents Doctoral Evaluation Project, Procedure for Doctoral Review, April, 1988). The project calls for an evaluation of all doctoral programs in public and independent institutions by major subject areas to encourage academic excellence and to ensure a comprehensive, high quality system of doctoral education (id., p 1). The result of this review is either continuation of the program, reevaluation within a designated time period or closure of the doctoral program by voluntary action of the institution or by directive of the Commissioner (ibid.).
Briefly, the procedure for doctoral review begins with the Office of the Doctoral Project soliciting names of distinguished out-of-State experts suggested by the institutions involved, national professional associations and the Doctoral Council (id., p 2). Consultant pools of potential Rating Committee members and site visitors are established from these names (ibid.). A Rating Committee for each major subject area is appointed by the Commissioner and meets to assign approved consultants as site visitors and to formulate specific areas for site visitor investigation (ibid.).
Teams of two or more consultants make the site visits and prepare a site visit report in which they report their findings concerning the program offered by the institution they have visited (id., p 3). The Rating Committee reviews all site visit reports, institutional responses and all other related materials in order to evaluate and rate program quality (id., p 4). The Education Department's Doctoral Council reviews the Rating Committee's report, including site visit reports, institutional responses and other relevant materials and hears oral presentations (id., p 5). It then makes its independent recommendations to the Commissioner of Education (ibid.).
Each curriculum for which registration is required must be registered before the institution may publicize the curriculum's availability or recruit and enroll students in the curriculum (8 NYCRR § 52.1 [g]). Upon denial of re-registration of a curriculum, an institution is required to cease recruitment of new students and must cease operation of each curriculum for which re-registration is denied by the effective date of such denial (id., § 52.23 [b] [1] and [2]).
Based upon information provided to us by the Education Department, we conclude that members of these doctoral program review committees are independent contractors. They are paid an honorarium which consists of specific services for a specific fee. Thus, they are not included in the regular State payroll. Further, the Department's budget request refers to these persons as consultants. The character of their service is that of an independent contractor rather than an employee.
Section 17 of the Public Officers Law provides for the defense and indemnification by the State of State employees for acts or omissions committed in the performance of their duties:
 "[T]he term `employee' shall mean any person holding a position by election, appointment or employment in the service of the state, whether or not compensated, or a volunteer expressly authorized to participate in a state-sponsored volunteer program, but shall not include an independent contractor. The term employee shall include a former employee, his estate or judicially appointed personal representative and persons who assist the education department or the department of health as consultants or expert witnesses in the investigation or prosecution of alleged professional misconduct, licensure matters, restoration proceedings, or criminal prosecutions for unauthorized practice pursuant to title eight of the education law or title II-A of the public health law" (emphasis supplied; Public Officers Law, § 17
[1] [a]).
Thus, section 17 covers employees, as defined therein, and expressly excludes coverage of independent contractors. A narrow exception to this exclusion covers certain consultants to the Education and Health Departments.
Chapter 228 of the Laws of 1981 added "licensure matters, restoration proceedings, or criminal prosecutions for unauthorized practice" to the provisions of section 17. The bill resulting in this change was introduced at the request of the Education Department (Bill Jacket, L 1981, ch 228, June 3, 1981 letter from sponsor Senator Pisani to John G. McGoldrick, Counsel to the Governor). The counsel to the Education Department, in a memorandum supporting the legislation, stated the purpose of the proposal:
 "To assist the Education Department to obtain the cooperation of consultants and expert witnesses in the investigation and prosecution of matters pertaining to unauthorized practice of a profession, professional licensure, and applications for the restoration of professional licenses, by granting limited immunity against damage suits and the costs thereof" (emphasis supplied; Bill Jacket, L 1981, ch 228, November 15, 1980 Memorandum from Robert D. Stone, Counsel and Deputy Commissioner for Legal Affairs).
He also stated the need for the proposal:
 "The investigation and prosecution of charges of unauthorized practice and other licensure proceedings, including applications for restoration of a professional license, often require the advice and assistance of experts knowledgeable in a particular profession or area of practice. Some of the professional societies have expressed a willingness to cooperate with the Department in providing the necessary experts. However, the experts themselves would not be protected under the existing law from civil liability or against the costs of defending nuisance suits" (emphasis supplied; ibid.).
It seems clear that "licensure matters", as used in section 17, was intended to cover matters relating to licensing of the professions. Thus, coverage under section 17 was extended to consultants and experts assisting the Education Department in professional licensing matters.
Since the persons assisting the Department in doctoral program review are consultants, they can only receive section 17 benefits if they fall within the coverage for consultants and expert witnesses to the Department. We believe that these consultants cannot reasonably be said to assist the Department "in the investigation or prosecution of . . . licensure matters. . .". The purpose of doctoral program review and the registration process is to ensure that curricula offered by institutions of higher education meet standards of educational quality established by the Regents. This is not a professional licensure matter. "Registration" is not a "licensing matter" within the meaning of section 17.
We conclude that consultants hired by the State Education Department to assist in the review of doctoral program curricula are not entitled to defense and indemnification by the State.